No. 7601.

Court of Appeal, Parish of Orleans.

Swift & Co.,            vs            Nick Manale et al.

BY DINKELSPEIL, J.

15

The issues presented in this case are as follows: The Plaintiffs, Swift & Co., sue Nick Manale and Veto Manale, one in the sum of $238.60 and the other as guarantor, in the sum of $200.00.

It appears that Nick Manale, in order to obtain credit from Plaintiffs of goods, wares and merchandise before obtaining credit agreed to furnish surety or a guarantee in the sum of $200. and did so with Veto Manale as surety, in the following words, to wit:

"In consideration of the sum of One Dollars to the undersigned in hand paid, receipt whereof is hereby acknowledged, and the further consideration that Swift & Co., Ltd., sells goods, wares and merchandise upon credit to Nick Manale of New Orleans, Parish of Orleans, State of Louisiana, the undersigned generally and severally hereby guarantees to said Swift & Co., payment at maturity in accordance with the terms of sale of the price and value of all goods, wares and merchandise sold by it to the said Nick Manale, from time to time, on and after the date hereof until ten days notice in writing signed by the undersigned to said Swift & Co., of the withdrawal of this guarantee, it being understood that the liability of the undersigned hereby created shall not at any one time exceed two hundred dollars. The undersigned hereby waives notice of non payment and acceptance of this guarantee." Signed 3rd February, 1913. Veto Manale, witnessed by C. G. Erman.

After this contract, several years in existence, in 1917 plaintiff sold merchandise to E Nick Manale, one of the defendants herein on

16

several occasions amounting to the sum of $538.66, on which account there was paid by Nick Manale on May 11th and 18th, 1917, first, $100.00 and subsequently $199.00, leaving a balance due of $238.66.

There is no defense to this case by Nick Manale; judgment by default was confirmed against him and is final, from which no appeal has been taken.

Veto Manale, guarantor, files an exception of no cause of action, that there are no proper parties defendand and that the petition is too vague, general and indefinite to enable exceptor to properly answer. The exception of no cause of action was maintained by his Honor, the Judge a quo, from which this appeal is taken.

In the brief for exceptor there is quoted amongst other things the case of Douglas vs. Reynolds, 7 Peters, U.S. page 113. An examination of that case leads us to a contrary conclusion of the pleading. At page 122 of the opinion rendered by Mr. Justice Story, we find the following:

> "The question involved is whether the guarantee contained in the letter is a limited or continuing guarantee, or, in other words, whether it covered advances, acceptances and instruments, in the first instance, to the amount of $8000. or terminated when these were discharged, or whether it covered successive advances, acceptances and instruments made to the same amount at any future time, _toties quoties_, whenever the antecedent transactions were discharged. Upon deliberate consideration we are of opinion that it is the continuing guarantee, and we found ourselves upon the language, and the apparent intent and object of the letter. Every

17.
2

instrument of this sort ought to receive a fair, reasonable interpretation according to the true import of its terms, it being an acknowledgement for the debt of another there is certainly no reason for giving it an expanded signification or liberal construction beyond a fair import of the terms." (Citing authorities)

Again at page 123, the Court goes on:

"If we examine the language or object of the present letter we think it is diffkcult to escape from the conclusion that it was intended and was understood by all the parties as a continuing guarantee; the object was to assist Haring in business; it was not contemplated to be a single transaction or an unbroken series of transac-    ' tions for a limited period."

Again at page 124 the Court goes on to express itself in this language:-

"It is rare that in cases of guarantee the language of the instrument is such as to make the division upon anz one the exact authority for that of another. The whole words and clauses are to be construed together, and that sense is to be given to each which best comports with the general scope and intent of the whole surety."

This court in 12th Court of Appeal, page 102, in the case of Dr. Joseph Conn vs. United States Fidelity & Guarantee Company et all, his Honor, Judge St. Paul, the organ of the Court, said:-

"The surety herein bound itself as follows:
'Having taken full cognizance of the building contract it bound itself as surety for said contractor in the full·sum of $950. 00 in

18

"favor of said owner, etc'. The surety was con-
demned by this judgment below for the sum of $950.
to make up the deficit for the various subcontrac-
tors and for an additional sum of ten per cent
attorney's fees, etc. The surety was liable not
beyond the obligation of his bond, butfor that
there could be no question of his liability."
(Citing authorities)

The last case we find in this connection is the
one to be found in the Louisiana Reports, Volume 140, the
case of the Hibernia Bank & Trust Company versus the
Succession of Cancienne, at page 970, reading from the syl-
labus:-

"One who signs as guarantor an instrument whereby
he declares that he binds himself to the amount stated in
the instrument or the payment of any indebtedness of the
third party named therein, of the guarantee named therein,
existing
whether xxxxxxxxx or to be thereby incurred , expressly
binding himself in solido with the principal debtor as if
the debts were contracted by him in person, is not to be
notified by the guarantee of the acceptance of the guarantee
in order to render the guarantor liable for debts contracted
on the faith of the guarantee."      And at page 975 the
Court goes on to say:-

        "Our opinion is that it was not necessary for
        the Bank to notify the guarantor of the accept-
        ance of his guarantee". (Giving many reasons and
        citing numerous authorities.) And at page
        979, the Court goes on to define guarantee in
        this language:  "A contract of guarantee like
        every other contract can only be made by the
        mutual assent of the parties. If the guarantee
        is signed by the guarantor, at the request of the

19

other party, or if the latter's agreement to accept is contemporaneous with the guaranty, or if the receipt from him of a valuable consideration, however small, is acknowledged in the guaranty, the mutual assent is proved, and the delivery of the guaranty to him or for his use completes the contract. But if the guaranty is signed by the guarantor without any request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guarantee is in legal effect an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract."

The Century Digest, defining the word "guaranty" at page 2644, gives the definition to be:

"Specially in law- liable to pay or perform. In law, to bind oneself that the obligation of another shall be performed, or that something affecting the right of the person in whose favor the guaranty is made shall be done or shall occur. To guarantee a contract or an undertaking by another is to bind oneself that it shall be performed or carried out. To guarantee the collection of a debt is to bind oneself to pay it if it proves not collectable by ordinary means. To guarantee any subject of a business transaction is to make oneself legally answerable for it being exactly as represented; as the seller guaranteed the quality of the goods; the carrier gave a Bill of Lading with the words 'Quality Guaranteed." meaning that he stipulated to be answerable for the quantity specified, without any further question or dispute as to amount."

"One who binds himself to see the stipulation or

20

obligation of another performed; in general, one
who is responsible for the performance of some
act, the truth of some statement, etc."
Again, quoting from the same authority: "Specifi-
cally in law, a separate, independent contract by
which the guarantor undertakes in qriting, for
a valuable consideration, to be answerable for the
payment of some particular debt, or future debts,
or the performance of some duty, in case of the
failure of another person primarily liable to pay
or perform.

Colbrook on Callateral Securities says:-
"One may orally assume the debt of another, making
himselfa debtor immediately, but if the engagement
is a mere guaranty of the obligation of another it
must be in writing." Cen. Dig. p. 3644.
"Guarantee. Law. An undertaking to answer for
the payment of some debt or the performance of
some duty in case of the failure of another liable
to such payment or performance. Worcester's Dic.
p. 645."

Guarantee. An engagement made by a third person
to secure in fulfillment of an agreement: one
who becomes surety for the performance of anothers
acts; to undertake that another shall perform a
certain stipulation; warrant; be responsible for."
New Websterian Dic. 1912, page 389.

Numerous other authorities cited in appellant's
brief are applicable in this case. Bate Bros., vs. Maple,
145, Cal., 341; Rouss vs. Krauss, 127 N.C. 667; Fertig vs
Bartels, 78. Fed. 866.

We therefore are of the opinion that the excep-
tion, particularly the exception of no cause of action,

21

and all the other pleadings are not relied upon save and except the one referred to, have no application in this case.

It is therefore ordered, adjudged and decreed that the judgment of the court a quo on the exceptions be over-ruled, and that this case be remanded to the lower court there to be tried in accordance with law and the views expressed in this opinion,- costs *of appeal to be paid by defendant and appellee, and costs below* to abide the final judgment of the case.

Judgment reve rsed; case remanded.